**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT BERG**, individually and as Trustee of the **ALAN PAUL BERG TRUST**,<br>6200 Oregon Avenue, NW, Washington, DC 20015,<br>Plaintiff,<br>v.<br>**IAG MOBILITY AND ELECTRIFICATION FUND, L.P.**, a Delaware Limited Partnership,<br>3420½ Brown Street, NW, Unit B, Washington, DC 20010; and<br>**P. KEVIN SMITH**, individually and as Chairman and Chief Executive Officer,<br>3420½ Brown Street, NW, Unit B, Washington, DC 20010,<br>Defendants. | Civil Action No. ____________<br><br>**COMPLAINT** |

## INTRODUCTION

1. This is an action for securities fraud, unregistered sale of securities, breach of contract, and common-law fraud arising from the fraudulent solicitation of a $50,000.00 limited partnership investment from Robert Berg, a lifelong resident of the District of Columbia, and Defendants' subsequent execution of a binding Release Agreement in which they promised to pay Mr. Berg $70,000.00, a payment that remains wholly unpaid more than fourteen months after it came due, with Defendants having deliberately cut off all communications with Plaintiff.

2. Plaintiff previously asserted these claims against P. Kevin Smith ("Smith") and IAG Mobility and Electrification Fund, L.P. (the "Fund" and, together with Smith, "Defendants"), and against IAG Asset Management Corporation ("IAG"), in *Berg v. IAG Asset Management Corp.*, No. 1:26-cv-02353-DLF (D.D.C.) (the "Related Action"). On October 6, 2026, the Court dismissed the claims against Smith and the Fund without prejudice for failure to file

proof of service. On October 27, 2026, the Court denied Plaintiff's motion to reopen and stated that Plaintiff "remains free to refile his claims." This action refiles them. IAG, which is a party only to the Related Action, is not named here.

3. Defendants, together with IAG, offered and sold a limited partnership interest in the Fund to Mr. Berg without registering the offering with the U.S. Securities and Exchange Commission, without filing a Form D, without delivering any Private Placement Memorandum or equivalent disclosure document, and while concealing material conflicts of interest, including that Defendant P. Kevin Smith executed the governing agreement on both sides of the same transaction and exercised total control over the Fund through a layered, opaque corporate structure designed to obscure accountability.

4. Defendants also failed to disclose that the Fund had created a related-party Affiliate Limited Partner entity under Section 14.5 of the Limited Partnership Agreement, an insider vehicle exempt from management fees and placement fees charged to outside investors like Plaintiff, a material conflict of interest that was never disclosed during the solicitation.

5. When Mr. Berg sought a return of his investment, Defendants executed a Share Purchase Release Agreement on or about July 31, 2025 (the "Release Agreement"), governed by the laws of Delaware, promising to pay Mr. Berg $70,000.00 USD at execution. That payment was never made. No explanation was given. Defendants went silent.

6. Plaintiff brings claims under: (i) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5; (ii) Section 20(a) of the Exchange Act for controlling-person liability against Defendant Smith; (iii) Delaware law for breach of the Release Agreement and fraudulent inducement; (iv) Florida Statutes Chapter 517 (Florida Securities

and Investor Protection Act, "FSIPA") for the unregistered sale and securities fraud, in the alternative; (v) common law unjust enrichment, in the alternative; and (vi) Delaware law for breach of the Settlement Agreement, in the alternative to the foregoing claims.

7. Plaintiff seeks compensatory damages of no less than $70,000.00, rescission of his $50,000.00 investment, attorneys' fees under FSIPA § 517.211(7), prejudgment interest, costs, and all other relief this Court deems just and proper. Punitive damages are sought solely on Plaintiff's state common law fraudulent inducement claim (Count 4). The FSIPA claim is pleaded in the alternative as Count 5.

## PARTIES

8. **Plaintiff Robert Berg** is an individual residing in the District of Columbia, with a principal address of 6200 Oregon Avenue, NW, Washington, DC 20015. Mr. Berg also brings this action in his capacity as Trustee of the Alan Paul Berg Trust (the "Trust"), the beneficial owner of the limited partnership interest at issue and the party to whom the $70,000.00 payment obligation under the Release Agreement is owed. The Joinder Agreement and Release Agreement were both executed by Mr. Berg as Trustee on behalf of the Trust.

9. **Defendant IAG Mobility and Electrification Fund, L.P.** (the "Fund") is a limited partnership organized under the Delaware Revised Uniform Limited Partnership Act. The Limited Partnership Agreement identifies the Fund's principal office as 3420½ Brown Street, NW (Unit B), Washington, DC 20010, an address within this District. The Fund is the issuer of the limited partnership interests sold to Plaintiff and the entity in which Plaintiff's capital was invested.

10. **Defendant P. Kevin Smith** (also known as Phillip Kevin Smith) is an individual who, on information and belief, resides in Florida. He is the Chairman and Chief Executive Officer of IAG Asset Management Corporation and controls the Fund through Invictus Advisory Group, LLC, a Delaware limited liability company that holds a "super-voting control position" in IAG. The Limited Partnership Agreement discloses in bold capital letters that "IAG IS CONTROLLED BY P. KEVIN SMITH." Smith is expressly identified in Section 14.18 of the Limited Partnership Agreement as the "Managing Partner", the individual whose acts and omissions directly constitute the conduct of the General Partner.

11. Smith personally executed the Release Agreement on behalf of Defendants, personally directed the solicitation of Mr. Berg's investment, and is the primary architect of the fraudulent scheme described herein. Smith is sued in his individual capacity, as a controlling person under Section 20(a) of the Exchange Act, and as personal guarantor of the General Partner's obligations under Section 10.5(b) of the Limited Partnership Agreement.

12. **Non-party IAG Asset Management Corporation** ("IAG" or the "General Partner") is a Florida corporation whose registered agent of record is P. Kevin Smith, 4737 N. Ocean Drive, Suite 213, Lauderdale-By-The-Sea, Florida 33308. IAG served as General Partner of the Fund, solicited Mr. Berg's investment, received his $50,000.00 capital contribution, and, with Defendants, executed the Release Agreement. IAG is a defendant in the Related Action and is not named here.

13. The Fund is a limited partnership that acts only through its General Partner. Each act of IAG alleged in this Complaint was taken on behalf of and for the benefit of the Fund and is attributable to the Fund. IAG, in turn, acts through Smith, its Chairman and Chief Executive Officer, who controls it.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over Plaintiff's Exchange Act claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa, which grants federal courts exclusive jurisdiction over actions to enforce liabilities and duties created by the Exchange Act. The Court has supplemental jurisdiction over Plaintiff's Florida FSIPA and common law claims pursuant to 28 U.S.C. § 1367(a), as they all form part of the same case or controversy as the federal claims. The state law claims present choice of law questions, not jurisdictional ones, that the Court is fully competent to resolve under applicable conflict of laws principles.

15. Venue is proper in this District pursuant to 15 U.S.C. § 78aa, which authorizes suit in any district "wherein any act or transaction constituting the violation occurred" or "wherein the defendant is found or is an inhabitant or transacts business." The following acts occurred in this District: (a) Defendants solicited Plaintiff's $50,000.00 investment while Plaintiff was a resident of the District of Columbia; (b) Plaintiff executed the Limited Partnership Agreement and Joinder Agreement, and remitted his $50,000.00 check, from within this District; (c) Plaintiff executed the Release Agreement in this District; (d) the Fund identifies a Washington, DC address as its principal office; and (e) Defendants' ongoing failure to pay and their deliberate cessation of communications have caused continuing harm to Plaintiff in this District. Venue is independently proper under 28 U.S.C. § 1391(b)(2).

16. This Court has personal jurisdiction over the Fund. The Fund, acting through IAG and Smith, purposefully directed conduct toward a District of Columbia resident, transacted business relating to the offer and sale of securities in this District, identified a D.C. address as the Fund's principal office, and executed binding contractual obligations with a D.C. resident.

17. This Court has personal jurisdiction over Defendant Smith individually. Smith purposefully directed the solicitation of Plaintiff's investment to a known District of Columbia resident, personally communicated with Plaintiff in this District, executed the Release Agreement with a D.C. resident, and caused tortious injury in this District through his fraud and subsequent silence. The exercise of personal jurisdiction over each Defendant comports with due process under International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny.

## FACTUAL ALLEGATIONS

### A. The Fund, the Offering, and the Control Structure

18. On or about July 30, 2024, Defendant IAG Asset Management Corporation, as General Partner, formed IAG Mobility and Electrification Fund, L.P. by executing the Limited Partnership Agreement. The Fund was marketed as a vehicle for investing in electric vehicle, battery, and clean energy technology companies, with a stated goal of providing investors with "long-term capital appreciation."

19. The Limited Partnership Agreement (a true and correct copy of which is annexed hereto as Exhibit A) discloses on its face, in bold capital letters on the cover page: "INVICTUS ADVISORY GROUP, LLC, A DELAWARE LLC, WHICH OWNS A SUPER-VOTING CONTROL POSITION IN IAG ASSET MANAGEMENT CORPORATION, THE GP. IAG IS CONTROLLED BY P. KEVIN SMITH, WHO IS ALSO CHAIRMAN AND CEO OF IAG ASSET MANAGEMENT CORPORATION." Defendant Smith thus controls the Fund, the General Partner, and the super-voting control entity through a deliberately opaque three-tier structure. Section 14.18 of the LPA further identifies Smith as the "Managing Partner", the individual solely responsible for the conduct of the General Partner at all times.

20. Plaintiff invested money in the Fund, a common enterprise managed and controlled entirely by IAG and Defendant Smith, with any returns to depend solely on the managerial and investment efforts of the General Partner and its control persons. Plaintiff had no role in the management, operation, or investment decisions of the Fund and exercised no control over the deployment of his capital.

21. The Limited Partnership Agreement itself acknowledges, in a securities legend, that the interests "HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933." On information and belief, no registration statement covering this offering has ever been filed with the SEC. A search of the SEC's EDGAR database reveals no Form D filing for IAG Asset Management Corporation, IAG Mobility and Electrification Fund, L.P., or any related entity in connection with this offering. Under Regulation D, an issuer must file Form D within fifteen days of the first sale of securities; IAG's failure to file is consistent with the absence of a perfected Regulation D exemption, and on information and belief no valid exemption was perfected.

22. The Limited Partnership Agreement charged investors a 2.0% per-annum management fee on gross capital contributions, payable quarterly in advance, and reserved a 20% incentive allocation on liquidated assets after a "Benchmark Preferred Return." These fee arrangements, coupled with IAG's discretionary authority to manage pooled investor capital for compensation, bring IAG Asset Management Corporation within the definition of an "investment adviser" under Section 202(a)(11) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-2(a)(11).

23. On information and belief, IAG has never registered as an investment adviser with the SEC, has not filed a Form ADV, and has not validly claimed any exemption from registration. That status was never disclosed to Plaintiff, as alleged below.

24. Defendants also failed to disclose the existence of the "Affiliate Limited Partner" created under Section 14.5 of the Limited Partnership Agreement, a related-party insider vehicle expressly exempt from the management fees and placement fees charged to outside investors. Plaintiff was never informed that this insider entity would participate in the same Fund on preferential terms. This undisclosed conflict of interest constitutes a material omission under Section 10(b) and Rule 10b-5.

**B. Plaintiff's Investment and Defendants' Material Misrepresentations and Omissions**

25. In or about September 2024, Defendant Smith personally solicited Mr. Berg's investment in the Fund through direct oral and written communications directed to Mr. Berg at his residence in the District of Columbia. Smith made the following specific material misrepresentations to Mr. Berg in the course of that solicitation.

26. Smith represented that the Fund was an established and legitimately organized investment vehicle operating in compliance with applicable securities laws. This representation was false. The Fund's offering was entirely unregistered under the Securities Act of 1933, no Form D had been filed with the SEC, and no valid Regulation D exemption had been perfected. The Fund had no legitimate compliance infrastructure whatsoever.

27. Smith represented that he and IAG possessed the professional expertise, operational infrastructure, and investment track record necessary to manage and prudently deploy investor capital in the electric vehicle, battery technology, and clean energy sectors. This representation

was false and misleading. On information and belief, Defendants had no verifiable track record of managing pooled investment capital, had not engaged any independent investment professionals or advisers, and had implemented no compliance, reporting, or governance framework of any kind.

28. Smith represented that the investment offered the prospect of significant long-term capital appreciation commensurate with the risks of a private placement in the clean energy sector, and implicitly represented that Plaintiff's capital would be actively deployed in pursuit of that objective. These representations were false and misleading. On information and belief, Plaintiff's $50,000.00 was never invested in any identified portfolio company, was never accounted for, and Plaintiff received no capital account statement, distribution, or any communication confirming the deployment or status of his funds at any time following investment.

29. Smith represented, expressly or by necessary implication, that the offering was being made in compliance with applicable investor protection requirements.

30. On or about September 20, 2024, Plaintiff invested $50,000.00 in the Fund by executing a Joinder Agreement (a true and correct copy of which is annexed hereto as Exhibit B) and the Limited Partnership Agreement and tendering a check in the amount of $50,000.00, payable to the Fund. At no time prior to or after Plaintiff's investment did Defendants deliver any Private Placement Memorandum, offering circular, subscription agreement, accredited-investor verification, audited financial statements, or any equivalent disclosure document.

31. In addition to the foregoing affirmative misrepresentations, Defendants failed to disclose the following material facts, each of which a reasonable investor in Plaintiff's position would have considered important in deciding whether to invest.

32. Defendants failed to disclose that the offering had not been registered with the SEC and that no valid exemption from registration under Regulation D or otherwise had been perfected.

33. Defendants failed to disclose the nature, extent, and financial consequences of Smith's conflicts of interest, including that Smith executed the Limited Partnership Agreement on both sides of the same transaction, as General Partner on behalf of IAG and, on information and belief, also as or on behalf of a Limited Partner, without disclosure or independent representation for Plaintiff.

34. Defendants failed to disclose that IAG was operating as an unregistered investment adviser in violation of the Investment Advisers Act of 1940, that no Form ADV had been filed with the SEC, and that no valid exemption from registration had been claimed.

35. Defendants failed to disclose that the Joinder Agreement had been predated to July 31, 2024 and that its execution date had been manually altered without disclosure to or consent from Plaintiff.

36. Defendants failed to disclose that the Fund had no audited financial statements, no independent oversight, no third-party administrator, and no mechanism by which investors could independently verify the status or deployment of their invested capital.

37. Defendants failed to disclose the existence and preferential treatment of the Affiliate Limited Partner under Section 14.5 of the LPA, an insider entity exempt from the management fees and placement fees charged to outside investors, a material conflict of interest that a reasonable

investor would consider important in evaluating the fairness and integrity of the Fund's structure.

38. The Joinder Agreement bears an original date of July 31, 2024, which was manually struck through and overwritten by hand to reflect a date of September 20, 2024. This material alteration of a key transaction document, without any explanation, disclosure, or Plaintiff's prior knowledge, is indicative of backdating, irregular capital-call practices, and a broader pattern of deceptive conduct.

39. Defendant Smith executed the Limited Partnership Agreement as General Partner on behalf of IAG Asset Management Corporation and, on information and belief, also as or on behalf of a Limited Partner, signing the same agreement on both sides of the transaction. This undisclosed self-dealing constituted a material omission that a reasonable investor would consider important in deciding whether to invest.

40. Following Plaintiff's investment, Defendants provided no capital account statements, no audited financial statements, no accounting of how Plaintiff's $50,000.00 was deployed, no distributions, and no communications concerning the Fund's performance, investments, or financial condition. Plaintiff received nothing of value in exchange for his $50,000.00 capital contribution. The LPA required quarterly reports within 45 days after the close of each quarter and audited annual financial statements within 90 days after fiscal year end. Defendants failed to deliver any such reports or statements at any time.

## C. The Share Purchase Release Agreement and Defendants' Default

41. After Plaintiff made repeated demands for return of his investment and repeatedly attempted to obtain any accounting or information from Defendants, Defendants and Plaintiff negotiated

and fully executed the Release Agreement dated July 31, 2025. The Release Agreement was signed by Defendant Smith as "Chairman/CEO" on behalf of IAG, and by Plaintiff Robert Berg as Trustee of the Alan Paul Berg Trust.

42. The Release Agreement (a true and correct copy of which is annexed hereto as Exhibit C) is governed by the laws of the State of Delaware. Section 1.3 expressly provides: "The Seller hereby agrees to pay the Buy[er] a sum of seventy thousand dollars ($70,000.00 USD) as an acknowledgement at execution of this agreement by the Parties." The $70,000.00 payment was thus due on July 31, 2025, the date of execution.

43. The Release Agreement recites that on September 17, 2024, the Seller sold $50,000.00 worth of shares to the Buyer. That date, September 17, 2024, differs from the September 20, 2024 execution date reflected in the manually altered Joinder Agreement. This internal inconsistency in Defendants' own documentation is a further indicia of the irregular and deceptive practices described herein.

44. The Release Agreement contains a further structural ambiguity: the Recitals identify the Seller as IAG Asset Management Corporation acting together with the Limited Partners forming IAG Mobility and Electrification Fund, L.P., while the signature block reflects execution by P. Kevin Smith as "Chairman/CEO" on behalf of "IAG Mobility and Electrification Fund, L.P.", two legally distinct entities. This deliberate blurring of the obligor's identity is consistent with a pattern of conduct designed to obscure which entity bears legal responsibility, thereby impeding Plaintiff's ability to enforce his rights. Both IAG Asset Management Corporation and IAG Mobility and Electrification Fund, L.P. are liable for the $70,000.00 payment obligation under alter ego and agency theories.

45. Defendants have paid no portion of the $70,000.00 due under Section 1.3 of the Release Agreement. As of the filing of this Complaint, the payment is more than fourteen months overdue.

46. Immediately following execution of the Release Agreement, Defendant Smith and IAG ceased all communications with Plaintiff. Plaintiff's repeated attempts to contact Defendants by all available means, including direct phone and email contact, have been wholly ignored. This deliberate cessation of communications following a broken payment commitment is consistent with fraudulent intent and bad faith and evidences a pre-formed intent not to honor the $70,000.00 obligation at the time of execution.

47. On or about May 14, 2026, Plaintiff, through counsel, transmitted a formal written demand to Defendants at both their Washington, D.C. address and their Lauderdale-By-The-Sea, Florida address, demanding immediate payment of the $70,000.00 due and owing under Section 1.3 of the Release Agreement (the "Demand Letter," a true and correct copy of which is annexed hereto as Exhibit D). Defendants were given ten (10) days to respond, with a response deadline of May 24, 2026.

48. On May 14, 2026, Plaintiff's counsel also transmitted a follow-up clarification letter (a true and correct copy of which is annexed hereto as Exhibit E) to Defendants confirming that the ten-day response period ran from May 14, 2026, with a deadline of May 24, 2026. Defendants failed to respond to either the Demand Letter or the clarification letter by the May 24, 2026 deadline, or at all. This failure to respond to formal written counsel demand, coming after more than nine months of complete silence following the broken payment obligation, further evidences Defendants' bad faith and willful refusal to honor their obligations to Plaintiff.

**D. The Related Action, the Settlement Agreement, and Plaintiff's Election**

49. On July 6, 2026, Plaintiff filed the Related Action against IAG, the Fund, and Smith, asserting the claims alleged here.

50. In the Related Action, IAG was served on July 26, 2026, and did not answer or otherwise respond, and the Clerk entered IAG's default on September 10, 2026. That history is alleged for context only. No default has been entered against Smith or the Fund, as to which no proof of service had been filed when the Court dismissed them without prejudice, and Plaintiff does not rely on IAG's default in this action.

51. Effective August 10, 2026 (the "Effective Date"), Plaintiff, IAG, the Fund, and Smith, individually, entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement"), a true and correct copy of which is annexed as Exhibit F. Smith signed the Settlement Agreement on August 11, 2026, individually and, as "Chairman/CEO," on behalf of IAG and the Fund.

52. In the Settlement Agreement, IAG, the Fund, and Smith, as the "Defendants" defined there, agreed to pay Plaintiff $70,000.00 and a further $25,000.00 for attorneys' fees and costs no later than fourteen days after the Effective Date, that is, by August 24, 2026. Settlement Agreement §§ 1.1, 1.2, 2.1.

53. Section 1.3 of the Settlement Agreement provides that, if the Total Settlement Amount is not received in full by that deadline, the Related Action "shall remain pending and unaffected," and Plaintiff may, "at Plaintiff's sole election," either (a) enforce the Settlement Agreement as a binding contract or (b) "continue to prosecute the Action without restriction." Section 4.3 provides that the mutual release does not extend to "Plaintiff's rights and remedies under

Section 1.3, Section 1.4, or Section 2.2" in the event the Total Settlement Amount "is not received in full or any Defendant otherwise defaults."

54. Defendants did not pay the Total Settlement Amount, or any part of it, by August 24, 2026, and have paid nothing since.

55. Plaintiff has not filed, and under Sections 1.3 and 3.2 of the Settlement Agreement is not obligated to file, a Notice of Voluntary Dismissal, because the condition precedent to that filing, confirmed receipt of the Total Settlement Amount in full, has not occurred.

56. Section 1.4 of the Settlement Agreement provides that if any Defendant fails to pay the Total Settlement Amount by the Payment Deadline and Plaintiff undertakes any action to enforce the agreement or collect amounts owed under it, "whether by suit, motion, or other proceeding," the defaulting Defendants shall reimburse Plaintiff for all reasonable attorneys' fees and costs incurred in that enforcement effort, in addition to any amount otherwise owed.

57. Plaintiff pleads his rights under Section 1.3 in the alternative. By filing this action, Plaintiff elects under Section 1.3(b) to continue to prosecute his claims without restriction. The mutual release in Section 4.1 does not bar the claims in Counts 1 through 6, because Section 4.3(a) excludes Plaintiff's rights and remedies under Section 1.3 where, as here, the Total Settlement Amount was not received in full. To the extent the Court concludes that the right to continue to prosecute "the Action" does not extend to this action, Plaintiff is entitled under Section 1.3(a) to enforce the Settlement Agreement as a binding contract, as alleged in Count 7, and Section 4.3(b) excludes from the release "any obligation created by this Agreement itself." Consistent with Recital D, Plaintiff does not treat the Settlement Agreement as an admission of liability.

58. IAG remains a defendant in the Related Action. Plaintiff seeks a single satisfaction of his damages and will credit against any judgment in this action any amount he recovers from IAG in the Related Action for the same injury.

## E. Timeliness

59. Plaintiff did not discover the facts constituting Defendants' violations, including that no part of his capital was deployed to any investment, that the offering was unregistered, and that IAG operated as an unregistered investment adviser, until after he made demands for the return of his investment and before the Release Agreement dated July 31, 2025. This action is brought within two years after that discovery and within five years after the violations. 28 U.S.C. § 1658(b).

## BASIS FOR INJUNCTIVE RELIEF

60. On information and belief, Defendants have no legitimate ongoing business operations, have collected management fees and investor capital without deploying them for any lawful investment purpose, and have deliberately ceased all communications with Plaintiff and, on information and belief, with other investors following the execution of the Release Agreement. Defendants' pattern of conduct, including the structurally defective and unregistered offering, the manual alteration of transaction documents, the execution of the Release Agreement with no intention to perform, and the total cessation of communications, is consistent with an intent to frustrate enforcement of any judgment. There is a material and imminent risk that Defendants will dissipate, conceal, transfer, or otherwise place assets beyond the reach of Plaintiff and this Court.

61. Plaintiff has no adequate remedy at law with respect to this risk. Plaintiff therefore requests that this Court enter a prejudgment asset freeze and order of injunctive relief pursuant to Rule 64 of the Federal Rules of Civil Procedure and applicable District of Columbia law governing prejudgment remedies, restraining Defendants from dissipating, concealing, or transferring assets pending resolution of this action. Plaintiff will seek that relief by separate motion.

## CAUSES OF ACTION

### COUNT 1

***Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 (Against All Defendants)***

62. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

63. Defendants, and each of them, directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase and sale of securities, specifically, limited partnership interests in the Fund, employed devices, schemes, and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiff, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

64. The material misrepresentations and omissions actionable under Section 10(b) and Rule 10b-5 include, without limitation, those set forth in paragraphs 26 through 40 above, including Smith's false representations concerning the Fund's regulatory compliance, his expertise and track record, the deployment of Plaintiff's capital, and the concealment of the Affiliate Limited

Partner's preferential fee structure, the manual alteration of the Joinder Agreement, and Smith's self-dealing dual role in executing the Limited Partnership Agreement.

65. Each Defendant acted with scienter, that is, with intent to deceive, manipulate, or defraud, or at minimum with severe recklessness as to the truth, giving rise to a strong inference of fraudulent intent within the meaning of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2). Smith personally orchestrated the solicitation and personally executed the governing documents on both sides of the transaction. The entity Defendants acted through Smith, their sole controlling mind, in a manner consistent only with an intentional or severely reckless disregard for Plaintiff's rights.

66. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. To the extent this action is based upon Defendants' omissions of material fact, reliance is presumed under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972). To the extent direct reliance is required, Plaintiff avers that he would not have invested $50,000.00 in the Fund had he been told the truth.

67. As a direct and proximate result of Defendants' violations of Section 10(b) and Rule 10b-5, Plaintiff has suffered damages in an amount to be proven at trial. The measure of recovery under Section 10(b) is Plaintiff's out-of-pocket loss, the difference between the $50,000.00 Plaintiff paid and the actual value of the LP interest he received, which, given that no portfolio investments were made and Plaintiff received nothing of value, was at or near zero at the time of the transaction. Plaintiff's Section 10(b) damages are therefore approximately $50,000.00, plus prejudgment interest from September 20, 2024, and costs. The foregoing loss was directly and proximately caused by Defendants' material misrepresentations and omissions: had Defendants disclosed the unregistered status of the offering, the absence of any valid

Regulation D exemption, the undisclosed conflicts of interest, and the true state of the Fund's operations, Plaintiff would not have made the investment and would not have suffered the loss. See Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005).

## COUNT 2

***Controlling Person Liability Under Section 20(a) of the Exchange Act (Against Defendant P. Kevin Smith)***

68. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

69. At all relevant times, Defendant P. Kevin Smith was a controlling person of IAG Asset Management Corporation and IAG Mobility and Electrification Fund, L.P. within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). The Limited Partnership Agreement expressly states, in bold, that "IAG IS CONTROLLED BY P. KEVIN SMITH." Smith held a super-voting control position over IAG through Invictus Advisory Group, LLC, served as Chairman and CEO, was the sole Managing Partner under Section 14.18, and personally directed all aspects of the offering and the post-execution conduct described herein.

70. Smith directly participated in, and was a culpable participant in, the primary violations alleged in Count 1 above. Smith cannot establish a good-faith defense to controlling person liability because he personally designed and executed the fraudulent scheme, personally solicited Plaintiff's investment, personally executed transaction documents on both sides of the deal, personally signed the Release Agreement, and personally directed the cessation of all communications with Plaintiff after breaching it. Smith is therefore jointly and severally liable with IAG and the Fund for all damages suffered by Plaintiff arising from those violations.

## COUNT 3

***Breach of Contract: Share Purchase Release Agreement (Against All Defendants) (Delaware Law)***

71. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

72. The Release Agreement is a valid, binding, and enforceable contract governed by the laws of the State of Delaware. The Release Agreement was fully executed by both Plaintiff and Defendant Smith on behalf of Defendants on or about July 31, 2025.

73. Section 1.3 of the Release Agreement imposes on Defendants an express, unconditional obligation to pay Plaintiff $70,000.00 USD at execution of the Agreement. This obligation was due on July 31, 2025. The Fund is liable for this obligation as the entity on whose behalf Smith executed the Release Agreement and, notwithstanding the ambiguity between the Recitals and the signature block, under alter ego and agency theories. Smith is personally liable under Section 10.5(b) of the LPA as personal guarantor of the General Partner's obligations.

74. Plaintiff fully performed all of his obligations under the Release Agreement, including executing the mutual releases provided in Sections 1.1 and 1.2. To the extent Defendants argue that those mutual releases bar Plaintiff's federal securities law claims, Plaintiff avers that (a) any such release is void or voidable as the product of fraudulent inducement, as alleged in Count 4; (b) releases of unwaivable federal securities law claims are void as against public policy; and (c) Defendants' total failure to perform their own obligations under the Release Agreement excuses any release obligations Plaintiff may have undertaken.

75. Defendants have materially breached the Release Agreement by failing to pay any portion of the $70,000.00 due to Plaintiff. This breach is total and continuing.

76. As a direct and proximate result of Defendants' breach of the Release Agreement, Plaintiff has suffered damages of $70,000.00, together with pre- and post-judgment interest at the applicable rate, attorneys' fees and costs to the extent permitted by law or equity, and all other consequential damages.

**COUNT 4**

***Fraudulent Inducement (Against All Defendants) (Delaware and District of Columbia Law)***

77. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

78. Defendants made material false representations to Plaintiff in connection with the solicitation of his $50,000.00 investment, including representations about the legitimacy of the offering, the experience and qualifications of the General Partner, the use of investor funds, and the regulatory compliance of the Fund. Defendants omitted material facts as described above. These misrepresentations and omissions were made knowingly or with reckless disregard for their falsity. Plaintiff justifiably relied on them in tendering his $50,000.00 investment.

79. Independently, Defendants made material false representations in connection with the Release Agreement. On information and belief, at the time Defendants executed the Release Agreement and promised to pay $70,000.00, Defendants had no intention of making that payment and lacked the good-faith intent to perform. Defendants' immediate and complete cessation of all communications upon execution, having secured the mutual release of claims from Plaintiff, is strong circumstantial evidence of fraudulent intent at the time of contracting. By executing

the Release Agreement without any intention to pay, Defendants fraudulently induced Plaintiff to release existing legal claims in exchange for a worthless promise.

80. Plaintiff justifiably relied on Defendants' misrepresentations in investing $50,000.00 in the Fund and in executing the Release Agreement, to his detriment.

81. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has suffered damages in an amount to be proven at trial. Because Defendants' conduct was intentional, willful, wanton, and in conscious disregard of Plaintiff's rights, Plaintiff is entitled to an award of punitive damages on this Count alone, pursuant to applicable Delaware and District of Columbia common law.

**COUNT 5**

***Violation of Florida Securities and Investor Protection Act (FSIPA), Florida Statutes Chapter 517 (Against All Defendants) (In the Alternative)***

82. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

83. Florida law governs the substantive rights and obligations of the parties under the Limited Partnership Agreement pursuant to Section 15.1 of the LPA, which provides: "This Agreement shall be governed by and construed under the laws of the State of Florida." This Court has supplemental jurisdiction over Plaintiff's Florida FSIPA claims pursuant to 28 U.S.C. § 1367(a) as they arise from the same transaction and occurrence as Plaintiff's federal claims.

84. The limited partnership interests sold to Plaintiff are "securities" within the meaning of Florida Statutes § 517.021. The offer and sale of those interests constitutes a violation of Florida

Statutes § 517.07, which makes it unlawful to offer or sell an unregistered security "within this state."

85. The offer of LP interests to Plaintiff originated in Florida within the meaning of Florida Statutes § 517.07. Smith, a Florida resident, and IAG Asset Management Corporation, a Florida corporation with offices in Lauderdale-By-The-Sea, conducted that solicitation from Florida. The fact that it was received by Plaintiff in the District of Columbia does not remove the offer from the reach of Florida's securities laws. IAG, the Fund, and Smith failed to register the securities or qualify for any applicable exemption.

86. Defendants employed devices, schemes, and artifices to defraud Plaintiff in connection with the offer and sale of securities, and made untrue statements of material fact and omissions of material fact, in violation of Florida Statutes § 517.301. The material misrepresentations and omissions are as set forth in paragraphs 26 through 40 above.

87. Defendant Smith personally participated in and aided the sale of the unregistered securities to Plaintiff within the meaning of Florida Statutes § 517.211(2), including by personally soliciting Plaintiff's investment, personally executing the transaction documents, and personally receiving management fees and other compensation in connection with the offering. Smith is therefore jointly and severally liable for the full amount of Plaintiff's damages under § 517.211.

88. Pursuant to Florida Statutes § 517.211(7), the Court shall award reasonable attorneys' fees to the prevailing party unless the Court finds that such an award would be unjust. Plaintiff seeks his fees and costs on that basis.

89. Plaintiff is entitled to rescission of his $50,000.00 investment and recovery of the consideration paid, together with interest thereon from the date of the violation (September 20, 2024), costs, and attorneys' fees pursuant to Florida Statutes § 517.211(1) and (4). All remedies available under Florida Statutes § 517.211(8) are cumulative and are pleaded in the alternative to Plaintiff's federal claims; Plaintiff defers any election of remedies until after the liability phase of this proceeding.

**COUNT 6**

***Unjust Enrichment (Against All Defendants) (In the Alternative)***

90. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

91. Plaintiff conferred a direct benefit on Defendants in the amount of $50,000.00 by investing that sum in the Fund. Defendants received, accepted, and retained Plaintiff's $50,000.00 without providing any value in return, no investment returns, no distributions, no accounting, and no repayment. On information and belief, Smith received management fees and other compensation derived from the use of Plaintiff's capital.

92. It would be inequitable and unconscionable for Defendants to retain Plaintiff's $50,000.00 without compensation. Plaintiff is entitled to recover this amount, together with interest and any profits or fees that Defendants derived from the use of Plaintiff's funds, to the extent that any other remedy is unavailable or inadequate. This claim is pleaded in the alternative to Count 3 (Breach of Contract) and survives to the extent that the Release Agreement or the Limited Partnership Agreement is found void, voidable, or otherwise unenforceable, including as a

result of the fraudulent inducement alleged in Count 4. All remedies under this Count are cumulative with those sought in Count 5.

## COUNT 7

***Breach of Contract: Settlement Agreement and Mutual Release (Against All Defendants) (Delaware Law) (In the Alternative)***

93. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein. This Count is pleaded in the alternative to Counts 1 through 6 and to any election by Plaintiff under Section 1.3(b) of the Settlement Agreement, as Federal Rule of Civil Procedure 8(d)(2) and (3) permit.

94. The Settlement Agreement is a valid and enforceable written contract governed by Delaware law. Settlement Agreement § 6.1. It is supported by consideration, including Plaintiff's agreement to release claims and to dismiss the Related Action with prejudice upon payment. Smith executed it individually and, as "Chairman/CEO," on behalf of IAG and the Fund, each of which is bound as a "Defendant" under it.

95. Plaintiff performed his obligations under the Settlement Agreement and all conditions to Defendants' payment obligations have occurred or been satisfied. Defendants were required to pay the Settlement Payment of $70,000.00 and the Fee Payment of $25,000.00, a total of $95,000.00, no later than the Payment Deadline of August 24, 2026. Settlement Agreement §§ 1.1, 1.2, 2.1.

96. Defendants breached the Settlement Agreement by failing to pay the Total Settlement Amount, or any part of it, by the Payment Deadline, and they have not paid it since.

97. Section 1.3(a) entitles Plaintiff, at his sole election, to enforce the Settlement Agreement as a binding contract in any court of competent jurisdiction. Plaintiff is entitled to damages of $95,000.00, to reimbursement of his reasonable attorneys' fees and costs of enforcement under Section 1.4, and to pre- and post-judgment interest at the rate allowed by Delaware law.

98. Plaintiff's claim under this Count is not released, because Section 4.3(b) of the Settlement Agreement excludes from the mutual release "any obligation created by this Agreement itself." Plaintiff will not recover duplicative amounts under this Count and Count 3, and any recovery will be subject to the single-satisfaction principle alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Berg, individually and as Trustee of the Alan Paul Berg Trust, respectfully prays that this Court enter judgment in his favor and against Defendants, jointly and severally, and without duplication of any recovery, as follows:

A. Compensatory damages of $70,000.00 for Defendants' breach of the Release Agreement, plus prejudgment interest from July 31, 2025 at the maximum rate permitted by applicable law, plus any consequential damages flowing from the breach;

B. In the alternative to the relief sought in the preceding paragraph and in Counts 1 through 6, compensatory damages of $95,000.00 for Defendants' breach of the Settlement Agreement (Count 7), together with Plaintiff's reasonable attorneys' fees and costs of enforcement under Section 1.4 of the Settlement Agreement and pre- and post-judgment interest at the rate allowed by Delaware law, without duplication of any other recovery;

C. In the alternative, rescission of Plaintiff's $50,000.00 investment in the Fund pursuant to Florida Statutes § 517.211(1) and (4), and recovery of the $50,000.00 consideration paid

thereunder, together with interest thereon from the date of the violation (September 20, 2024), less any income received, upon tender of the security;

D. In the further alternative, compensatory damages for Defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5, in an amount no less than $50,000.00 and otherwise to be proven at trial;

E. Punitive damages in an amount sufficient to punish Defendants for their intentional, willful, and fraudulent conduct and to deter similar conduct in the future, solely pursuant to Count 4 (Fraudulent Inducement) under applicable Delaware and District of Columbia common law, and not on any federal securities claim;

F. Attorneys' fees and costs pursuant to Florida Statutes § 517.211(7) upon Plaintiff's prevailing on his FSIPA claims (Count 5), and attorneys' fees and costs on all other counts to the extent permitted by applicable law and fee-shifting provisions;

G. An order of injunctive relief restraining Defendants from dissipating, concealing, or transferring assets pending resolution of this action, including a prejudgment attachment or asset freeze pursuant to Rule 64 of the Federal Rules of Civil Procedure and applicable District of Columbia law governing prejudgment remedies;

H. A declaration that the Release Agreement is void or voidable as the product of fraudulent inducement and that all mutual releases executed in connection therewith are of no force or effect; and a declaration that Section 4.2(d)(ii) of the Limited Partnership Agreement's capital recall right shall not apply to any judgment, settlement payment, or other amounts recovered by Plaintiff in this action, which do not constitute "distributions" within the meaning of the LPA;

I. A declaration that Defendants defaulted under the Settlement Agreement, that Plaintiff is entitled to exercise his rights under Section 1.3 of that agreement, and that the mutual release in Section 4.1 does not bar the claims asserted in this action by reason of Section 4.3 of that agreement;

J. Post-judgment interest on all sums awarded at the maximum rate permitted by applicable law from the date of judgment until paid in full; and

K. Such other and further relief as this Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## CORPORATE DISCLOSURE STATEMENT

99. Pursuant to Local Civil Rule 26.1 of the United States District Court for the District of Columbia, Plaintiff Robert Berg is an individual and has no parent companies, subsidiaries, or affiliates that have outstanding securities in the hands of the public. The Alan Paul Berg Trust is a private trust with no parent companies, subsidiaries, or affiliates. No publicly held company owns ten percent or more of the stock of any party to this action.

Dated: November 3, 2026
Washington, D.C.

Respectfully submitted,

Edmund D. Cooke Jr., Esq. [Bar No. 284414
Cooke Cleveland LLC
910 17th Street, N.W., Ste. 408
Washington, DC 20006
Telephone: 2202 559-8601
Email: eddmundc@cookecleveland.com

Counsel for Plaintiff Robert Berg, individually and as Trustee of the Alan Paul Berg Trust